NEW ORLEANS, ST. LOUIS AND CHICAGO RAILROAD CO.
*v.* A. W. McDONALD ET AL.

1. CONSTITUTIONAL LAW. *Legislative power. Aid to railroads by towns.*

   The legislature, under the constitutional restriction that two-thirds of the qualified voters of 'a town in this state, at a special election or regular election to be held in such town, shall assent thereto, may authorize a town to aid a railroad, by issuing and delivering interest-bearing bonds, as a donation, to secure the permanent location in the town of a depot of the road.

2. SAME. *Constitutionality of the act authorizing the town of Durant to issue bonds.*

   The act of 26th March, 1874, authorizing the town of Durant to issue bonds in aid of railroads, is constitutional.

APPEAL from the Chancery Court of Holmes County.

Hon. THOMAS WALTON, Chancellor.

The question presented in this case is the constitutionality of an act of the legislature, authorizing the town of Durant to donate interest-bearing bonds in aid of a railroad.

The pleadings which raise the question are set out in the opinion of the court.

*W. P. Harris*, for the appellants, argued the case orally.

*Harris & George*, on the same side, filed a brief, in which it was urged, —

1. That the act of 1874, authorizing the donation, was not a violation of the tenth section of the Bill of Rights; because it had been repeatedly decided that railroads were such public benefits that taxation in support thereof was valid; citing *Loan Association* v. *Topeka*, 20 Wall. 667, and commenting on cases therein cited; 2 Redfield on Railways, 398, § 230.

2. That art. 12, § 14, of the Constitution expressly recognized the power in the legislature to authorize such taxation, and merely limits that power by requiring the assent of two-thirds of the qualified voters to give their assent, and that the power of the legislature can no longer be questioned. *Brown* v. *Beatty*, 34 Miss. 227.

3. That the legislature did not mean by " donation " a gift in the ordinary sense: it clearly meant that, in promoting the

railroad enterprise, the town might give its aid in the form of a simple contribution, or in the form of a stock subscription. It is admitted that the railroad was for the public benefit of the town. It was not a gift, therefore, but an equivalent for a benefit secured.

4. Where no express provision of the Constitution has been violated, the courts have no right to interfere. The judgment of the legislature must be considered as final in the matter, for in such cases they must be presumed to know whether the donation is for a public purpose. Cooley on Constitutional Limitations (3d ed.), 128, 129; Cooley on Taxation, 32–40, 111.

*E. C. Walthall*, on the same side.

1. In considering the constitutionality of this law, this court, acting on the rule which guides all courts where the constitutionality of a law is in question, "must sustain it if possible." *Campbell* v. *Mississippi Union Bank*, 6 How. 672; 44 Miss. 361; 41 Miss. 31; Sedgwick on Statutory and Constitutional Law, 482.

2. The Federal Constitution confers powers expressly enumerated; that of the State contains a general grant of all power not excepted. The former is a constitution of delegated powers, the latter a constitution of limitations. The Federal government can do nothing but what is authorized expressly or by clear implication. The State may do whatever is not prohibited. *Sharpless* v. *Philadelphia*, 21 Penn. St. 160; *Stockton* v. *Stockton*, 41 Cal. 147; 3 Am. Railway Reps. 103 *et seq.*

3. " The legislative power of this State shall be vested in the legislature." Constitution of Mississippi, art. 4, § 1. This grant vests it with the whole legislative power of the State. In determining, therefore, in a given case, upon the legitimacy of the exercise of power by this department, we consider whether it is in its nature legislative. If such is its character, it will be held to have passed under the general grant of power, unless in some other part of the Constitution is found a prohibition or limitation, express or clearly implied, upon the exercise of the power. *Alcorn* v. *Hamer*, 38 Miss. 748; 3 Am. Railway Reps. 102, 109; 5 Am. Law Rev. 150 *et seq.*

4. The judiciary cannot control the legislative discretion, and is powerless to relieve against a law the only objection to which is that it is hard and oppressive and against natural justice. *Daily* v. *Swope*, 47 Miss. 367 ; 2 Kent, 340, note, "Public use;" *Williams* v. *Cammack*, 27 Miss. 219.

5. The act in question is in conflict with no provision of the Constitution of Mississippi ; it falls within the meaning and scope of legislative power, and is of a class of acts which have been repeatedly declared constitutional. *Olcott* v. *Supervisors*, 16 Wall. 678; *Railroad Co.* v. *Otoe County*, 16 Wall. 667 ; Lacey's Railway Digest, 675, citing more than one hundred cases; Dillon on Municipal Corporations, § 104 *et seq.*, and notes; 30 Iowa, 9; 45 Ala. 696 ; 34 Miss. 240 ; 42 Miss. 555 ; 1 Am. Railway Reps. 243. Michigan and Wisconsin alone hold the contrary doctrine. In the former there is a single case, by a divided court. In Wisconsin, the decisions have been conflicting and unsteady on this question, and thus their force is weakened.

6. Sect. 14, art. 12, Constitution of Mississippi, furnishes clear authority for the exercise of this power, even if the above decisions were all wrong, and none existed before. *Hawkins* v. *Carroll County*, 50 Miss. 735.

7. There is no difference in principle between aid given to a railroad company by subscription to its capital stock, and aid given by donation of money. Equally with taxation, the municipal subscription is justified only because for a public use ; and the nature of the use cannot be changed by receiving stock for the money raised. *Stockton Railroad* v. *Common Council of Stockton*, 41 Cal. 147 ; *Bridgeport* v. *Housatonic Railroad*, 15 Conn. 475; *Davidson* v. *Ramsey Co.*, 18 Minn. 482; 36 Ala. 410 ; 2 Dillon, 353 ; 2 Cent. L. J. 337.

8. No propositions can be affirmed with greater certainty than that, under constitutions substantially like ours, railroads, though operated by private companies, are by legal conclusion for "public use;" and aid may be extended for their construction by means of subscriptions to the capital stock, or by donations, made by cities and other public subdivisions of the State, under the authority of the legislature first given or subsequently obtained. Such is the purport of the judicial

decisions of the highest courts of Virginia, Connecticut, Pennsylvania, Ohio, Indiana, Tennessee, Illinois, Kentucky, New York, Georgia, Florida, Texas, Missouri, South Carolina and other states. These decisions cover a period of little less than half a century of time, and embody the views of constitutional law, with reference to the question before us, which were entertained by some of the most distinguished jurists who have shed lustre upon the American bench.

*H. S. Allen*, for the appellees, argued the case orally.

*R. H. Montgomery*, *Allen*, and *Gwin*, on the same side, filed an elaborate brief, in which they made the following points: —

1. The act in question is a violation of the tenth section of the Bill of Rights, art. 1, § 10, of the Constitution. " Private property shall not be taken for public use, except upon due compensation first being made to the owners thereof, in manner to be provided by law." This due compensation must be paid in dollars and cents, and no imaginary advancement in values from the improvement will meet the constitutional requirement. *Brown* v. *Beatty*, 34 Miss. 227.

2. Donations to corporations by legislative act are void. Sedgwick on Statutory and Constitutional Law, 429, note, " Municipal aid to railroads." This was a *donation* to the railroad company. It is so styled in the act, and was so in fact. The government cannot levy a tax to make a donation to itself, and it cannot compel for others what it cannot compel for itself. If this was a subscription to the capital stock of the company, so that the town of Durant would become a stockholder, there would be some semblance of " compensation." Sedgwick on Statutory and Constitutional Law, 429, note.

3. The sole ground on which the cases which sustain such acts are based, is, that the railroads are " public enterprises," and that property given to them is devoted to the " public use." But that is no reason at all, for grist-mills, flour-mills, manufactories, hotels and hundreds of other enterprises are public, in the same sense that railroads are. Says Dillon on Municipal Corporations, 223, " Taxation to aid private railway companies, even if a public use, is hardly consistent with a proper respect for private property and individual rights."

4. The effect of acts like the one under consideration, in other states has been disastrous. The question is an open one in this state. Our Constitution is peculiar. The decisions in other states, and in the Supreme Court of the United States, are in no sense binding on this court. It remains to be seen whether, with the other states as warnings before us, we will follow their decisions into the broad road to general bankruptcy. See, on this subject, 1 Dillon, 219, and note.

5. The question is this, Can the legislature authorize two-thirds of the voters of a town to *compel* the other third to donate their property to a corporation ? This is communism. It saps the foundation of the right of property, and leads to anarchy. The one-third who vote against the road are the tax-payers. Whenever the power of taxation is used as a ruthless extortion, it is the duty of the courts to interfere. Cooley on Constitutional Limitations, 488 *et seq.*, 494, and cases cited.

6. Art. 12, § 14, Constitution of Mississippi, does not contemplate a *donation*, but it contemplates that the county, city or town may become a stockholder, or *lend* its credit. Had it meant that the legislature could authorize the town to donate the property of its citizens to railroads, fit language would have been used to express the idea. The section puts a restriction on the legislature, and impliedly prohibits donations. 1 Dillon on Municipal Corporations, 218–228, 221, note 4; Cooley on Constitutional Limitations, 212–220 ; *Bailey* v. *Treasure*, 23 Mich. 504.

7. " The enumeration of rights in the Constitution shall not be construed to deny or impair others retained by and inherent in the people." Const. art. 1, § 32. There are, then, certain *inherent* rights retained by the people. Laws are void when they invade these rights, although not against any express words of the Constitution. Cooley on Constitutional Limitations, 175 *et seq.; People* v. *Morris*, 13 Wend. 328. One of these inherent rights is property. No man can be compelled by legislation to make a direct gift of his property to another ; nor can the same result be reached indirectly. Sedgwick on Statutory and Constitutional Law (2d ed.), 127–138. Property is anterior to constitutions, and even to organized government.

Constitutions measure the powers of rulers, not the rights of the governed.  E. P. Hurlbut on Human Rights and their Political Guarantees ;  Cooley on Constitutional Limitations, 34–37.

8. Cases can be found where laws similar to the one under consideration have been sustained.  But, in view of their consequences, every approved law author has placed on such laws the seal of condemnation.  1 Dillon on Municipal Corporations, 218–231 ;  Sedgwick on Statutory and Constitutional Law, 429–459 ;  Cooley on Constitutional Limitations, 213, 215.  Those courts which held such laws valid have already repented.  *Phillips* v. *Albany*, 28 Wis. 340.  But their repentance comes too late.  The sacrifice is already laid upon the altar.

CAMPBELL, J., delivered the opinion of the court.

In pursuance of authority conferred by an act of the legislature of Mississippi, approved on the 26th March, 1874, the town of Durant, with the assent thereto of two-thirds of the qualified voters of the town, at an election held therein, issued and delivered to the appellant $15,000 of interest-bearing bonds, as a donation to secure the permanent location within said town of a depot for the " Kosciusko Branch " railroad.  The appellees exhibited their bill as tax-payers in said town to enjoin the levy and collection of taxes to pay interest on said bonds, or the bonds themselves.  The appellant demurred.  The question is as to the validity of the act of the legislature authorizing a donation to secure said depot.

It is not an open question in this state that the legislature may authorize a county or town to aid a railroad.  That power was held to exist under the former Constitution, and the present Constitution distinctly recognizes it.  Art. 12, § 14.

There is no just distinction between a donation and a subscription for stock in such an enterprise.  To recognize such a distinction is to disregard the fundamental theory of aid to railroads.  That is not to make the municipality a stockholder for dividends on stock, or direct returns from an investment for profit, but to aid the enterprise for expected benefits to result to the public from its success.  The end to be accomplished, and not the means of its accomplishment by assistance from the municipality, is the matter to be considered ; and this being

the case, it matters not what is the particular form in which the legislature authorizes the assistance to be given. It may be by a subscription for stock, or a lending of credit or a donation. If it were not for the constitutional restriction, the legislature could authorize a county, city or town to aid in any of these modes railroads or other public enterprises, without the assent of the qualified voters. We do not perceive any constitutional objection to the act of the legislature involved, and, as the decree is contrary to this view, it will be reversed, and decree entered here sustaining the demurrer and dismissing the bill.